**William BURRUS, President, American Postal Workers Union, AFL–CIO, and American Postal Workers Union, Plaintiffs,**

v.

**Anthony J. VEGLIANTE, Vice President, Labor Relations, United States Postal Service, and United States Postal Service, and Elaine Kaplan, Special Counsel, U.S. Merit Systems Protection Board, Kay Coles James, Director, U.S. Office of Personnel Management, and U.S. Office of Personnel Management, Defendants.**

No. 00 CIV. 8392(AKH).

United States District Court,
S.D. New York.

Oct. 15, 2002.

Darryl J. Anderson, Anton G. Hajjar, Peter J. Leff, Mutshed Zaheed, O'Donnell, Schwartz & Glanstein, Rosen, Dipreta & Goldstein, New york City, for plaintiffs.

### *OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

HELLERSTEIN, District Judge.

I am asked to resolve a conflict between two important public policies: the right of a union of federal employees to communicate with its members using traditional methods of communication through dedicated bulletin boards in non-public areas of the work place; and the obligations of federal employees not to engage in political activities in the work place.

Unions traditionally use bulletin boards in dedicated areas of the work place to communicate with their members. The subjects of communication may extend to any and all matters of union and employee concern, including evaluations by the union of the positions of candidates for elected public office, including the presidency of the United States.

The Hatch Act, 5 U.S.C. §§ 7321–7326, forbids employees of the United States and its agencies, generally, from politicizing the work place. It assures that federal employees are appointed and promoted according to merit, not the spoils of patronage, and that they serve the public equally, regardless of political affiliation. Accordingly, federal employees may not display the buttons or insignia of political parties or candidates on their uniforms while they work, or disseminate their political literature or otherwise engage in political activity in the work place.

I hold, in this dispute between management of the United States Postal Service and officials and employees of the American Postal Workers Union, that the Hatch Act was not intended to curtail normal and traditional methods of communication between the union and its members; that preventing the union from communicating its evaluations of candidates seeking election to public office, by posting such evaluations on dedicated union bulletin boards in non-public areas of post offices, is not required by the Act; and that the communications between the Union and its members is constitutionally protected speech.

### *Factual Background*

In September 2000, during the presidential campaign of 2000 between Albert H. Gore, Jr., and George W. Bush, officers of the American Postal Workers Union ("APWU" or "Union"), representing approximately 350,000 employees of the United States Postal Service ("USPS"), issued a poster comparing the positions and voting records of the two presidential candidates on issues of importance to the Union and its members. The poster, without explicitly recommending either candidate, suggested that the Democratic slate of

Gore and Lieberman held positions more favorable to the interests of postal workers than the Republican slate of Bush and Cheney. On October 6, 2000, the Union mailed the poster to approximately 27,000 recipients of its "News Service," a periodical typically consisting of one or two page-sized flyers capable of being posted on Union bulletin boards.[1] As the Union expected, recipients of the poster displayed it on the dedicated APWU bulletin boards located in non-public areas of postal facilities.

Shortly after, on October 24 and 25, 2000, Jane McFarland of the Office of Special Counsel ("OSC") of the USPS, called Roy Braunstein, APWU Legislative Director, and told him that displaying the poster on the Union bulletin boards violated the Hatch Act, and instructed him to cause the APWU locals to remove the posters. When Braunstein responded that he lacked authority to request such removal, the USPS issued an advisory opinion that employees of the USPS who posted or displayed the posters in federal buildings would be violating the Hatch Act, thus subjecting them to potential discipline. The Advisory Opinion stated:

> We have concluded that [the poster] is partisan in nature in that it clearly encourages readers to support one political party and oppose the other. Therefore, employees posting or displaying these posters in federal buildings would be in violation of the Hatch Act.

Defendant Anthony Vegliante, Vice President for Labor Relations of the USPS, instructed the USPS vice presidents for area operations to remove the posters if local Union officers had not removed them. This lawsuit followed. Plaintiffs William Burrus, the president of the APWU, the AFL–CIO, and the APWU filed suit on November 2, 2000, seeking a declaratory judgment that the Hatch Act did not apply, an injunction preventing the USPS from removing or directing the removal of the posters or disciplining its employees, and an injunction directing the OSC to rescind the Advisory Opinion and enjoining OSC officials from ordering the USPS to remove the posters from Union bulletin boards.

### Procedural History

With their filing of their complaint, plaintiffs moved for a temporary restraining order and a preliminary injunction. On November 3, 2000, after hearing both sides, I granted plaintiffs' motion, and preliminarily enjoined the USPS from removing the posters or other materials dealing with the 2000 election from the Union bulletin boards and from disciplining any employee for refusing to remove such materials. The Second Circuit Court of Appeals denied defendants' request for an emergency stay pending appeal and, on December 4, 2001, dismissed the appeal as moot, since the election had passed and the posters were no longer displayed.

Following remand, a Second Amended Complaint and discovery, both sides moved for summary judgment. For the reasons stated below, I grant plaintiffs' motion and deny defendants' motion, to the extent of upholding the right of the Union, under the Constitution and the Hatch Act, to communicate with its members on bulletin boards dedicated for that purpose in non-public areas of United States post offices, including communications that evaluate the positions of candidates for elective offices.

---

1. Under Article 22 of the collective bargaining agreement between the APWU and the USPS, APWU local union affiliates may maintain Union-dedicated bulletin boards in non-public areas of postal facilities, in order to communicate to APWU members.

### Discussion

The Hatch Act, originally enacted in 1939 but significantly amended in 1993, prohibits federal employees from "engag[ing] in political activity ... while ... on duty [or] in any room or building occupied in the discharge of official duties." 5 U.S.C. § 7324 (2002). The law serves important federal interests, protecting the efficient execution of federal programs without bias or favoritism, hiring and promoting based on merit and not political favoritism, and avoiding the appearance of politically-driven justice, coercion of government workers to support political positions, or the building of political machines. *See United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO et al.,* 413 U.S. 548, 565–66, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Biller v. United States Merit Systems Protection Board,* 863 F.2d at 1079, 1089 (2d Cir.1988).

Plaintiffs are governed by the Hatch Act even though the Act does not apply to union activities, for the Union depends on federal employees, its members, to hang and disseminate the posters in issue. The issue is whether or not these employees, on whom the Union depends for its communications to its members, the USPS work force and members of the APWU, are involved in "political activity" within the meaning of the Hatch Act when they hang and disseminate the Union posters to be seen and read by fellow employees, and whether or not such hanging and dissemination constitutes protected speech under the First Amendment.

Prior to the 1993 amendments of the Hatch Act, federal employees were forbidden to take "active part" in "political management" and "political campaigns." Section 7324 provided:

(a) An employee in an Executive agency or an individual employed by the government of the District of Columbia may not -

. . . . .

(2) take an active part in political management or in political campaigns. For the purpose of this subsection, the phrase "an active part in political management or in political campaigns" means those acts of political management which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.

(b) An employee or individual to whom subsection (a) of the section applies retains the right to vote as he chooses and to express his opinion on political subjects and candidates.

5 U.S.C. § 7324 (1982) (amended 1993). It was considered unfair to federal employees, however, and an abridgement of their rights as American citizens, to prevent them entirely from taking active part in political activities. Thus, the case law interpreting the pre–1993 Act held that federal employees were barred, not from all activities that might be said to be political, but only from those done "in concert" or "in tandem" with political candidates or parties. *See United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Biller v. United States Merit Systems Protection Board,* 863 F.2d 1079, 1090 (2d Cir.1988); *Blaylock v. Merit Systems Protection Board,* 851 F.2d 1348, 1352–53 (11th Cir. 1988). In *Biller,* two union presidents circulated statements in union publications to USPS employees supporting the election of Walter Mondale, and soliciting contributions to the unions' political action funds.

The opinions presented were those of the Union alone, and were not instigated by political parties or candidates. The Court of Appeals held the speech protected under the First Amendment and not violative of the Hatch Act, since the speech was not "in concert" or "in tandem" with a political candidate or party, and the Union presidents, therefore, were not "tak[ing] an active part in political management or in political campaigns." 863 F.2d at 1090.

The 1993 amendments were enacted to clarify the rights of federal employees. Only misuse of "official authority or influence," and misuse of the work place and official duties, were barred; otherwise, federal employees could take active part in political activity. Thus, sections 7323 and 7324 were amended in 1993 to read:

Section 7323. Political activity authorized; prohibitions

(a) Subject to the provisions of subsection (b), an Employee may take an active part in political management or in political campaigns, except an employee may not -

(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election;

. . . . .

(b)

. . . . .

(4) For purposes of this subsection, the term "an active part in political management or in political campaigns" means those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.

(c) an employee retains the right to vote as he chooses and to express his opinion on political subjects and candidates.

Section 7324. Political activities on duty; prohibition

(a) An employee may not engage in political activity -

(1) while the employee is on duty;

(2) in any room or building occupied in the discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof;

5 U.S.C. §§ 7323, 7324 (2002).

Unfortunately, the clarifying purpose of the 1993 amendments created an ambiguity. Did Congress intend that section 7324 be read broadly and absolutely, or consistently with section 7323? The use of union bulletin boards in non-public areas of post offices was not prohibited "before July 19, 1940" and, as the cases cited above make clear, would not qualify as misuses of "official authority or influence for the purpose of interfering with or affecting the result of an election." Section 7323, codifying and clarifying pre–1993 law, thus spelled out that federal employees could use such traditional methods of communication to persuade fellow-employees how they might wish to vote. But did section 7324 then take away that traditional right by forbidding any "political activity" while employees were "on duty," or "in any room or building occupied in the discharge of official duties?" There is not a shred of support for the position of defendants that the enactment of sections 7324 should now prevent employees from exercising their rights as citizens to hang and view political posters on union bulletin boards, located in traditional places in non-public areas of post offices. Section 7323(c) clearly provides that federal employees retain their right to express opinions "on political sub-

jects and candidates." Section 7323 will have lost its meaning if the few minutes taken to hang a poster, or view it while passing, is considered to be a prohibited act while "on duty" or "in the discharge of official duties" in a non-public area of a "room or building."

The Act does not define "political activity." Federal regulations applicable to the Act provide that political activity is an "activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group." 5 C.F.R. § 734.101 (2002). But not all "political activity" is forbidden. Federal employees may express their opinions on political candidates and on political subjects; they may serve as officers of a political party, manage a political campaign, and act as an election judge; and they may make political contributions to a party or candidate, to the extent not otherwise prohibited by the Act. *See* 5 C.F.R. §§ 734.201–734.208 (2002). But they may not attend political events while on duty, stuff envelopes for a candidate while on duty, or display buttons, pictures, signs, stickers or badges while on duty. *See* 5 C.F.R. § 734.306 (2002). Nothing in the regulations addresses the display of political materials on union bulletin boards. Neither the statute, nor the regulations, proscribes that which has historically been considered a lawful and protected method of communication on a subject of interest to unions and their members.

 The posters in the case before me constitute expressions of opinions on "political subjects and candidates," squarely within the meaning of section 7323(c). The use is traditional and historically lawful, completely within the meaning of section 7323(b)(4), and not a misuse of "official authority or influence for the purpose of interfering with or affecting the result of an election" as provided by section 7323(a). Nor has there been any interference with official "duty," or any appropriation of a "room or building occupied in the discharge of official duties" within the contemplation of section 7323(a). The 1993 amendments were not intended, and should not be interpreted, to abridge traditional methods used by unions, precluding the ability of unions of federal employees to communicate with their employees.

Defendants quote statements of legislators as supporting defendants' argument that the 1993 reforms were intended to bar all political activity at the work site. *See, e.g.,* 139 Cong. Rec. 3974 (Mar. 3, 1993) (statement of Rep. Clay) (the reform "prohibits Federal employees from engaging in any form of political activity while on duty, in a Federal facility, in their uniform, or while using any vehicle owned or leased by the Government"); 139 Cong. Rec. 3281 (Feb. 23, 1993) (statement of Rep. Gephardt) ("[a]ny on-the-job political activities are prohibited"); 139 Cong. Rec. 3273 (Feb. 23, 1993) (statement of Rep. Sawyer) (the Act "does not allow Federal and postal employees to engage in partisan activities during working hours"). However, these statements beg the question and do not clarify the ambiguity between sections 7323 and 7324.

The House Committee Report, much more than comments of individual Representatives, speaks directly to the point, and expresses a clear intent "that the posting of union newsletters on bulletin boards" remains lawful and protected. The House Committee Report noted that union newsletters frequently solicit members to contribute to the union's political action committee, and that posting and distribution of such newsletters on bulletin boards and in federal buildings have been "allowed under existing law," and are to "continue to be allowed." Only "direct person-to-person solicitations of funds at

the worksite or on duty time is clearly prohibited." The House Committee Report states as follows on the subject of union bulletin boards:

13. Union Bulletin Boards

Currently, many Federal agencies make bulletin boards available to Federal employee unions on which items of interest to the union members may be posted. One of the items usually posted on these bulletin boards is the union newsletter. Frequently, union newsletters contain a solicitation for members to contribute to the political committee of the union. An overly literal reading of H.R. 20 might hold that posting such a newsletter would be a violation of Section 7324(a)(4)(B) concerning solicitations in federal buildings, or Section 7325(a)(2) concerning engaging in political activities in a federal building. The committee does not intend that this legislation be construed in such a manner. Rather, the committee intends that the posting of union newsletters on bulletin boards, which has been allowed under existing law, continue to be allowed. Moreover, the distribution of union newsletters in a Federal building should continue to be permitted. On the other hand, direct person-to-person solicitations of funds at the worksite or on duty time is clearly prohibited.[2]

H.R.Rep. No. 103–16, at 20 (1993).

The bulletin boards are clearly marked as controlled by the union, and are traditional modes for union/employees communications. They do not purport to express opinions of the USPS, their display does not affect the hiring and promotion of workers; they do not interfere with service to the public, and have no coercive impact on job performance or the political views of employees, who cast their ballots in a private election booth. The Hatch Act was not intended to interfere with their use.

Congress carefully considered the First Amendment implications of the Hatch Act. Section 7321 of the Hatch Act expressed Congress' deep concern about protecting the First Amendment rights of federal employees.

It is the policy of the Congress that employees should be encouraged to exercise fully, freely, and without fear of penalty or reprisal, and to the extent not expressly prohibited by law, their right to participate or to refrain from participating in the political processes of the Nation.

5 U.S.C. § 7321 (2002). Congress intended that the Act be interpreted in favor of free expression. Cf. Biller v. United States Merit Systems Protection Bd., 863 F.2d 1079, 1085 (2d Cir.1988) (noting that "when the strictures of the [pre–1993] Act and the First Amendment seem to conflict, it was Congress' aim that the Act be construed in favor of free expression"). Unions, as entities independently exercising First Amendment rights, are entitled to the same constitutional protection for their expressions as are extended to their members and organizers. See First National Bank of Boston v. Bellotti, 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual"); Allee v. Medrano, 416 U.S. 802, 819 n. 13, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) ("it has been implicitly recognized that protected First

---

**2.** Sections 7324(a)(4)(B) and 7325(a)(2) of H.R. 20 are identical to the enacted 5 U.S.C. §§ 7324(a)(4)(B) and 7324(a)(2), respectively.

Amendment rights flow to unions as well as to their members and organizers").

■ The poster, and like communications, represent an expression of opinion by the Union in a manner, in a place and on a topic that is precedented, customary and historic. Bulletin boards located on job sites have customarily served to accommodate these expressions. Unions use their dedicated bulletin boards to announce Union events such as meetings and elections, and to communicate with their members about a variety of topics. One customary topic of Union communications is opinions on candidates for political offices. Thus, for over thirty years, the APWU National Union has distributed News Services and posters supporting candidates endorsed by the APWU to its locals for display on APWU bulletin boards in postal facilities. This long-standing practice is not barred under the Hatch Act.

### *Conclusion*

■ For the reasons set out above, I hold that the APWU is entitled to advocate the election of candidates through display of posters and like materials on designated union bulletin boards in non-public areas of post offices, so long as the display is not coordinated with or in concert with a political party or candidate, and that defendants are enjoined from interfering with the Union's displays, and from disciplining postal employees who bring such posters and refused to remove them. The parties shall settle a form of judgment, submitting a single judgment with alternative clauses reflecting differing points of view, and a single explanatory letter reflecting supporting and opposing reasoning.

SO ORDERED.