336 F.3d 82
 William BURRUS, President, American Postal Workers Union, AFL-CIO, and American Postal Workers Union, AFL-CIO, Plaintiffs-Appellees,
v.
Anthony VEGLIANTE, Vice President, Labor Relations, United States Postal Service, Elaine Kaplan, Special Counsel, U.S. Merit Systems Protection Board, Kay Coles James, Director, U.S. Office of Personnel Management, U.S. Office of Personnel Management, and United States Postal Service, Defendants-Appellants.
 Docket No. 02-6257.
 United States Court of Appeals, Second Circuit.
 Submitted: October 28, 2002.
 Decided: July 14, 2003.
 
 David J. Kennedy, Assistant United States Attorney (Gideon A. Schor, Assistant United States Attorney, of counsel), for James B. Comey, United States Attorney for the Southern District of New York, New York, New York, for Defendants-Appellants.
 Darryl Anderson (Peter J. Leff, of counsel), O'Donnell, Schwartz & Anderson, Washington, D.C., for Plaintiffs-Appellees.
 Before: WINTER and CABRANES, Circuit Judges, and JONES,* District Judge.
 WINTER, Circuit Judge.
 
 
 1
 This action involves the questions of whether the 1939 Hatch Act, as amended in 1993, 5 U.S.C. §§ 7321-7326, prohibits postal workers from displaying political materials on union bulletin boards in nonpublic areas of post offices, and, if so, whether the Act is constitutional.
 
 
 2
 Various federal officials, the United States Office of Personnel Management, and the United States Postal Service ("USPS") (collectively the "government") appeal from Judge Hellerstein's decision enjoining them from interfering with the American Postal Workers Union ("APWU") display of political materials on APWU bulletin boards. See Burrus v. Vegliante, 247 F.Supp.2d 372 (S.D.N.Y. 2002). Because the postings in question fall squarely within the activities proscribed by the Hatch Act at 5 U.S.C. § 7324(a) and because there is no merit in the APWU's constitutional arguments, we reverse.
 
 BACKGROUND
 
 3
 The APWU represents approximately 350,000 USPS employees nationwide. Article 22 of the national collective bargaining agreement between the USPS and the APWU provides for APWU bulletin boards in nonpublic postal workplaces, as follows:
 
 
 4
 The Employer shall furnish separate bulletin boards for the exclusive use of the Union party to this Agreement, subject to the conditions stated herein, if space is available.... Only suitable notices and literature may be posted ....
 
 
 5
 According to the APWU, it has regularly used these bulletin boards to make political endorsements by separate postings or through a "News Service" that it regularly posts on the bulletin boards.
 
 
 6
 In September and October, 2000, the APWU's Legislative Department developed and distributed a poster comparing the campaign positions and voting records of the Republican and Democratic party presidential candidates on issues of concern to the APWU and its membership. While the poster purported to present only factual information, the APWU does not seriously dispute that it was intended to generate support for Vice President Gore.[1] (A representative excerpt from the poster is set out in Appendix A.) However, the evidence is that the poster was not produced in cooperation or coordination with the Democratic party or presidential campaign.
 
 
 7
 After the posters were displayed on USPS bulletin boards in some post offices, the United States Office of Special Counsel ("OSC")[2] issued an advisory opinion to the USPS stating that the posting violated the Hatch Act.[3] The USPS thereafter instructed managers at all postal facilities to remove the posters and return them to APWU representatives.
 
 
 8
 On November 2, 2000, five days before the presidential election, the APWU commenced the present action, seeking declaratory and injunctive relief against removal of the posters and any disciplinary actions to prevent involved employees. On November 3, 2000, the district court enjoined the USPS from ordering the removal of the posters and from disciplining the USPS employees involved in the posting.
 
 
 9
 The government appealed and moved in this court for an emergency stay of the district court's injunction pending appeal. On November 3, 2000, we declined to grant an emergency stay and set a hearing on the stay motion for November 14, 2000. On November 8, 2000, the day after the 2000 presidential election, the government withdrew its request for a stay but informed the court that it would pursue its appeal. On December 3, 2001, a panel of this court issued a summary order dismissing as moot the government's appeal and noting that appellate review would be available following resolution in the district court of the APWU's request for a declaratory judgment and permanent injunction. Biller v. Vegliante, 24 Fed.Appx. 73, 74-76 (2d Cir.2001) (unpublished summary order).
 
 
 10
 Following amended pleadings and a period of discovery, the government moved, and the APWU cross-moved, for summary judgment. On October 15, 2002, the district court filed an opinion and order granting summary judgment in favor of the APWU. The district court's opinion concluded:
 
 
 11
 I hold that the APWU is entitled to advocate the election of candidates through display of posters and like materials on designated union bulletin boards in non-public areas of post offices, so long as the display is not coordinated with or in concert with a political party or candidate, and that defendants are enjoined from interfering with the Union's displays, and from disciplining postal employees who bring such posters and refused [sic] to remove them.
 
 
 12
 Burrus, 247 F.Supp.2d at 379.
 
 
 13
 The government again appealed, and the district court stayed its order until 4:00 p.m. on October 22, 2002. In light of the upcoming mid-term election, the government moved in this court for a continuation of the stay, and we heard oral argument on October 22, 2002. We granted the government's motion from the bench, extending the stay of the district court's judgment and setting an expedited briefing schedule for the government's appeal. The appeal was fully briefed on October 28, 2002, and we thereafter issued an order continuing the stay of the district court's injunction until further order of this court to give us time to prepare an opinion. We held that the government had demonstrated a likelihood of success on the merits and that "the completion of the election will not render the action moot in light of a record demonstrating beyond peradventure that the issue is capable of repetition and yet evading review."
 
 
 14
 For the reasons that follow, we reverse the judgment of the district court and order entry of judgment for the government.
 
 DISCUSSION
 
 15
 We review de novo both the grant of the APWU's motion for summary judgment and the denial of the government's motion for summary judgment. Scholastic, Inc. v. Harris, 259 F.3d 73, 81 (2d Cir.2001). The material facts are undisputed.
 
 
 16
 a) The Hatch Act
 
 
 17
 We begin with a description of the Hatch Act, 5 U.S.C. §§ 7321-7326, and its history. The Act limits the political activities of federal employees in the interests of promoting efficient, merit-based advancement, avoiding the appearance of politically-driven justice, preventing the coercion of government workers to support political positions, and foreclosing use of the civil service to build political machines. See Burrus, 247 F.Supp.2d at 375 (citing United States Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers, 413 U.S. 548, 565-66, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Biller v. United States Merit Sys. Prot. Bd., 863 F.2d 1079, 1089 (2d Cir.1988)).
 
 
 18
 Prior to its amendment in 1993, the Act imposed a broad prohibition on political activities by federal employees. See generally S.Rep. No. 103-57, at 2-3 (1993), reprinted in 1993 U.S.C.C.A.N. 1802, 1803-04. In addition to prohibiting federal employees from using their official authority to influence elections, prior to the 1993 Hatch Act Reforms, Section 7324 prohibited federal employees from at any time taking "an active part in political management or in political campaigns."[4] See id. at 1804-05. By 1993, concern over using the civil service as a source of political patronage had subsided, and Congress passed the Hatch Act Reform Amendments. These amendments restored, with limited exceptions for employees in certain sensitive positions, the rights of federal employees to "take an active part in political management or in political campaigns" while off-the-job, but retained and strengthened prohibitions against "political activity" while on duty or at the workplace. See id. at 1803.
 
 
 19
 Amendments to the former Section 7324, see Note 4, supra, were placed in a new Section 7323, and a new Section 7324 was added, see 5 U.S.C. §§ 7323-7324. These two new sections are set out in their entirety in Appendix B to this opinion. The restrictions on political activity imposed by the new Sections 7323 and 7324, as modified by the Hatch Act Reforms, are of two distinct categories: (i) new Section 7323 sets out general prohibitions — not limited by time or place — on certain kinds of political activity, and (ii) new Section 7324 defines specific on-the-job circumstances in which all political activity is prohibited.
 
 
 20
 The general prohibitions of Section 7323 include a ban on federal employees using official authority to affect an election or to affect the political activity of those subject to government authority, Section 7323(a)(1), (4), engaging in political fundraising, Section 7323(a)(2), and running for partison political office, Section 7323(a)(3). Also prohibited are the giving or receiving of political contributions by members of the Federal Election Commission, Section 7323(b)(1), and the taking of "an active part in political management or political campaigns" by employees of certain specified federal agencies (not including the USPS), Section 7323(b)(2), (3). Section 7323(a) provides that with the exception of those employees specified in Section 7323(b), employees "may take an active part in political management or in political campaigns" — a substantial relaxation of the previous limits on political activities for most federal employees. Section 7323(a) (emphasis added). Also, Section 7323(c) provides that "[a]n employee retains the right to vote as he chooses and to express his opinion on political subjects and candidates."
 
 
 21
 As noted, whereas the new Section 7323's provisions are not limited by time or place, the new Section 7324 concerns on-the-job activities and is the dispositive provision regarding the issues in this case. The new Section 7324 prohibits federal employees from engaging in "political activity": (i) while on duty, Section 7324(a)(1); (ii) "in any room or building occupied in the discharge of official duties by an individual employed or holding office in the [federal government]," Section 7324(a)(2); (iii) in government uniform, Section 7324(a)(3); or (iv) while using a government vehicle, Section 7324(a)(4). While the Hatch Act does not itself define "political activity" for purposes of Section 7324, the Office of Personnel Management's implementing regulations, enacted in July 1996, provide the following definition:
 
 
 22
 Political activity means an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group.
 
 
 23
 5 C.F.R. § 734.101. The regulations contain examples of prohibited conduct under the Hatch Act. In particular, a covered employee:
 
 
 24
 may not wear partisan political buttons or display partisan political pictures, signs, stickers, or badges while he or she is on duty or at his or her place of work.
 
 
 25
 5 C.F.R. § 734.306 (Example 16).
 
 
 26
 b) Application to the Postings
 
 
 27
 The APWU has conceded that "[f]ederal employees on active duty were among the individuals who posted and/or displayed the poster on bulletin boards in United States Post Offices."[5] See APWU Response to Request for Admissions, J.A. at 388. This conduct falls squarely and unambiguously within the prohibition of new Section 7324(a)(2), which provides that:
 
 
 28
 An employee may not engage in political activity —
 
 
 29
 * * * * * *
 
 
 30
 (2) in any room or building occupied in the discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof ....
 
 
 31
 5 U.S.C. § 7324(a)(2).
 
 
 32
 The APWU argues — and the district court agreed — that the display of the posters does not constitute "political activity" within the meaning of the Hatch Act because the new Section 7324's term "political activity," like Section 7323's term "active part in political management or in political campaigns," refers only to activity "coordinated with or in concert with a political party or candidate," see Burrus, 247 F.Supp.2d at 375-76, 379. However, the term "political activity" is broader than the quoted language in Section 7323 and does not imply that the particular conduct be in concert with a candidate's campaign or party. The language of the statute is plain.
 
 
 33
 Moreover, the pertinent regulations define political activity in a way that clearly includes the APWU poster. That definition covers any and all activity "directed toward the success or failure of a political... candidate," 5 C.F.R. § 734.101, and clearly reaches the poster. Indeed, one of the illustrative examples provided in the regulation includes an employee's "display [of] partisan political ... signs ... at his or her place of work," 5 C.F.R. § 734.306 (Example 16).
 
 
 34
 In concluding otherwise, the district court relied upon our decision in Biller v. United States Merit Systems Protection Board, 863 F.2d 1079 (2d Cir.1988). However, Biller involved an interpretation of the pre-1993 Hatch Act, in particular the pre-1993 Section 7324. As noted, that Section provided that no employee may "take an active part in political management or in political campaigns," which Biller reasonably interpreted as requiring conduct in concert with political candidates or parties. 863 F.2d at 1090. New Section 7324's term "political activity" was not used in any relevant provision of the pre-1993 Hatch Act, but did appear in the pre-1993 implementing regulations. As used in those regulations, "political activity" included a vast range of activities, only a few of which were in concert with campaigns or parties. Title 5 C.F.R. § 733.111(a) provided, in part, as follows:
 
 
 35
 (a) All employees are free to engage in political activity to the widest extent consistent with the restrictions imposed by law and this subpart. Each employee retains the right to —
 
 
 36
 (1) Register and vote in any election;
 
 
 37
 (2) Express his opinion as an individual privately and publicly on political subjects and candidates;
 
 
 38
 (3) Display a political picture, sticker, badge, or button;
 
 
 39
 (4) Participate in the nonpartisan activities of a civic, community, social, labor, or professional organization, or of a similar organization;
 
 
 40
 (5) Be a member of a political party or other political organization and participate in its activities to the extent consistent with law;
 
 
 41
 (6) Attend a political convention, rally, fund-raising function; or other political gathering;
 
 
 42
 (7) Sign a political petition as an individual;
 
 
 43
 (8) Make a financial contribution to a political party or organization;
 
 
 44
 ...
 
 
 45
 (b) Paragraph (a) of this section does not authorize an employee to engage in political activity in violation of law, while on duty, or while in a uniform that identifies him as an employee.
 
 
 46
 Biller, 863 F.2d at 1083 n. 1 (setting out 5 C.F.R. § 733.111(a)). This list demonstrates beyond any doubt that, before 1993, the term "political activity," in the Hatch Act context, included many activities other than the prohibited active participation in political management or in political campaigns addressed by Biller.
 
 
 47
 The district court attached no significance to this informative prior definition of the term "political activity." Rather, it assumed tacitly that the phrase "engage in political activity" in Section 7324(a) has the same meaning as the phrase "take an active part in political management or in political campaigns" in Section 7323. It described this approach as reading Section 7324 "consistently with Section 7323[.]" Burrus, 247 F.Supp.2d at 376. However, had Congress intended the new Section 7324 to apply to the same activity addressed by the new Section 7323, we are confident that it would have used the same words. See United States v. Wilson, 290 F.3d 347, 360 (D.C.Cir.2002) ("Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning.") (quoting Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1444 (D.C.Cir.1988) (internal citation omitted)).
 
 
 48
 Finally, even if there were some lurking ambiguity in the term "political activity," the view that Section 7324 places broad prohibitions on on-the-job and at-the-workplace conduct is entirely consistent with the legislative history of the enactment of Section 7324. The Senate Report characterizes the 1993 Hatch Act Reform Amendments as follows:
 
 
 49
 [The amendment] would retain and strengthen current law prohibitions against political activity "on-the-clock" — on Government time and in Government premises. It would broaden the current law to also provide Federal civilian and postal employees the opportunity to participate voluntarily in political activities as private citizens "off-the-clock" ....
 
 
 50
 S.Rep. No. 103-57, at 2 (1993), reprinted in 1993 U.S.C.C.A.N. 1802, 1803; see also H.R.Rep. No. 103-16 (1993), available at 1993 WL 46758, at *15 (stating that the 1993 Amendments are "grounded in the concept that Federal employees should be free to engage in political activities on their own time but should not engage in any political activity on the job"). The Senate report goes on to state, specifically with regard to Section 7324, that "[p]olitics on the job, including the wearing of political buttons, is prohibited." S.Rep. No. 103-57, at 14 (1993), reprinted in 1993 U.S.C.C.A.N. 1802, 1815) (emphasis added).
 
 
 51
 This construction of the on-the-job political activity proscribed by the amended Hatch Act was echoed in the comments of many members of Congress, as well as the President. For example, Senator Glenn, a sponsor of the 1993 amendments and the manager of the bill as Chairman of the Senate Committee on Governmental Affairs, stated as follows:
 
 
 52
 [W]hat we do by this legislation is we say basically that on the job — on the job — we tighten up the Hatch Act. We strengthen current prohibitions against on-the-job political activity by Government employees. We beef up penalties for violators such as I just read. And we say there will be no political activity on the job. There are no exceptions to that. There will be no political activity of any kind on the job.
 
 
 53
 How about off the job? Now, we say, still with major restrictions, major controls, that off the job we should allow America's 2.5 to 3 million civil servants to reclaim their constitutional rights by participating in our Nation's political process, voluntarily, on their own time, as private citizens....
 
 
 54
 139 Cong. Rec. 15,739 (July 15, 1993) (statement of Sen. Glenn) (emphasis added); see also 139 Cong. Rec. 15,366 (July 13, 1993) (statement of Sen. Glenn) ("[N]o political activity on the job, zero, including even what is permitted under today's Hatch Act."). When signing the amendments into law, President Clinton echoed this understanding:
 
 
 55
 While employees will now be entitled to volunteer on their own time for the candidate of their choice, all political activity in the Federal workplace will be prohibited, including the wearing of campaign buttons.
 
 
 56
 Statement of President Clinton (Oct. 6, 1993), reprinted in 1993 U.S.C.C.A.N. 1843, 1843.[6]
 
 
 57
 Therefore, the APWU posting is: (i) within the term "political activity"; (ii) within the applicable regulations defining that term; (iii) within the understanding of the meaning of "political activity" that existed at the time of the 1993 amendment (displaying "a political picture, sticker, badge, or button"), see Biller 863 F.2d at 1083 n. 1 (citing 5 C.F.R. § 733.111(a)(3)); and (iv) within Congress' understanding of the activity it intended to prohibit ("[N]o political activity on the job, zero, including even what is permitted under today's [pre-1993] Hatch Act," 139 Cong. Rec. 15,366 (July 13, 1993) (statement of Sen. Glenn)).
 
 
 58
 The district court also suggested that, even if displaying the posters constituted "political activity" for purposes of Section 7324, it would still fall outside that Section's prohibitions because it did not involve "interference with official `duty,'" or "appropriation of a `room or building occupied in the discharge of official duties.'" See Burrus, 247 F.Supp.2d at 377. However, the prohibitions of the new Section 7324 do not turn on a showing of "interference" with duty or "appropriation" of workplace rooms or buildings. The Section requires only that an employee be "on duty," Section 7324(a)(1), or be "in any room or building occupied in the discharge of official duties by [a government employee]," Section 7324(a)(2).
 
 
 59
 Therefore, we also disagree with the district court's further implication that Section 7324(a)(1) and (2) prohibits political activity by an employee only while "on duty" or "in the discharge of official duties." Burrus, 247 F.Supp.2d at 376-77. Rather, the statutory text prohibits political activity while either on duty or in a room or building occupied in the discharge of official duties by any government employee. See 5 U.S.C. § 7324(a).
 
 
 60
 Finally, the district court stated that Section 7323(c), which provides that an employee "retains the right to ... express his opinion on political subjects and candidates," exempts the display of the posters from attack under Section 7324. See Burrus, 247 F.Supp.2d at 376-77; Appellees' Br. at 35. We disagree. Section 7323(c) qualifies only the off-the-job active participation prohibitions contained in Section 7323(b) and the prohibitions on official coercion in Section 7323(a).
 
 
 61
 For example, although an employee of a politically sensitive agency may not at any time actively participate in a political campaign, he or she remains free under Section 7323(c) to vote and to express opinions. In other words, Section 7323(c) defines permitted passive and noncoercive conduct under Section 7323. As noted, Section 7324 is a more particularized provision, dealing not with overall conduct, but with conduct on the job or at the workplace. Indeed, if Section 7323(c) gives employees the right to express opinions on political subjects under all circumstances, then Section 7324 has little effect. Where possible we avoid construing a statute so as to render a provision mere surplusage. See, e.g., New York v. Shore Realty Corp., 759 F.2d 1032, 1044 (2d Cir. 1985).
 
 
 62
 c) Constitutional Claims
 
 
 63
 APWU's constitutional claims are also without merit.
 
 
 64
 The argument that the Hatch Act is impermissibly vague must be rejected in light of United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), in which the Supreme Court held that the pre-1993 version of the Hatch Act was not excessively vague because of the implementing regulations providing and the availability of, advisory opinions. Id. at 575-80 & n. 21, 93 S.Ct. 2880. The meaning of "political activity" under the new Section 7324 is amply elaborated by definition and examples in the current regulations, 5 C.F.R. § 734.101, 734.306, and an advisory opinion is available (but was not sought by APWU) from the OSC, see 5 C.F.R. § 734.102(a).
 
 
 65
 APWU also argues that the APWU bulletin boards are limited public fora under the First Amendment. However, interior work areas of post offices are nonpublic fora. See Longo v. United States Postal Service, 983 F.2d 9, 11 (2d Cir.1992). Moreover, these work areas and bulletin boards are open only to the union, and then only with respect to "suitable notices and literature," see J.A. 44, which by any definition surely excludes material posted in violation of federal law.
 
 
 66
 Government regulation of speech in a nonpublic forum "need only be reasonable in light of the purpose of the forum and reflect a legitimate government concern," Gen. Media Communications, Inc. v. Cohen, 131 F.3d 273, 282 (2d Cir.1997) (internal citation omitted), and the Hatch Act easily passes that test. See, e.g., United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 476 n. 21, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (describing the Hatch Act's employee-protective rationale as "much stronger justification for a proscriptive rule than ... the Government's interest in workplace efficiency"); United Pub. Workers v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1947) ("Congress may reasonably desire to limit party activity of federal employees so as to avoid a tendency toward a one-party system.").
 
 
 67
 We have reviewed the APWU's remaining arguments and find them to be without merit.
 
 CONCLUSION
 
 68
 For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to grant summary judgment in favor of the government.
 
 
 Appendix A
 
 
 69
 Which Candidates for President and Vice President Will Stand Up for YOU?
 
 
 70
 This is a critical election for postal workers and our families. We must decide: which candidates will stand up for us? Which ones will help us fight to preserve our jobs? Which ones will do the best job at preserving Social Security benefits? Take a look at their records and positions on the issues and decide for yourself.
 
 
 71
 The Presidential GEORGE W.
Candidates AL GORE BUSH

Privatization of Supports Generally favors
 the Postal APWU's fight privatization
 Service to protect of government
 USPS jobs services.
 from
 privatization.

Raise Minimum Favors raising Opposed minimum
 Wages minimum wage
 wage. increases as
 governor.

Union Members' Opposes Supports
 Involvement in "paycheck "paycheck
 Politics deception" initiatives deception."
 to limit
 union members'
 political
 activity.

Equal Pay for Supports equal No position.
 Equal Work pay, pushed
 for inclusion of
 $14 million in
 pay equity
 efforts in FY
 2000 budget.

Social Security Would protect Would divert
 current guaranteed funds from
 Social Social Security
 Security benefits, into individual
 add stock market
 increased accounts,
 benefits. requiring cuts
 in guaranteed
 benefits.

Raising Opposes. Would consider.
 Retirement
 Age to Collect
 Social Security
 Benefits
 
 
 APPENDIX B
 
 
 72
 § 7323. Political activity authorized; prohibitions
 
 
 73
 (a) Subject to the provisions of subsection (b), an employee may take an active part in political management or in political campaigns, except an employee may not —
 
 
 74
 (1) use his official authority or influence for the purpose of interfering with or affecting the result of an election;
 
 
 75
 (2) knowingly solicit, accept, or receive a political contribution from any person, unless such person is —
 
 
 76
 (A) a member of the same Federal labor organization as defined under section 7103(4) of this title or a Federal employee organization which as of the date of enactment of the Hatch Act Reform Amendments of 1993 [enacted Oct. 6, 1993] had a multicandidate political committee (as defined under section 315(a)(4) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(4)));
 
 
 77
 (B) not a subordinate employee; and
 
 
 78
 (C) the solicitation is for a contribution to the multicandidate political committee (as defined under section 315(a)(4) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(4))) of such Federal labor organization as defined under section 7103(4) of this title or a Federal employee organization which as of the date of the enactment of the Hatch Act Reform Amendments of 1993 [enacted Oct. 6, 1993] had a multicandidate political committee (as defined under section 315(a)(4) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(4))); or (3) run for the nomination or as a candidate for election to a partisan political office; or
 
 
 79
 (4) knowingly solicit or discourage the participation in any political activity of any person who —
 
 
 80
 (A) has an application for any compensation, grant, contract, ruling, license, permit, or certificate pending before the employing office of such employee; or
 
 
 81
 (B) is the subject of or a participant in an ongoing audit, investigation, or enforcement action being carried out by the employing office of such employee.
 
 
 82
 (b)
 
 
 83
 (1) An employee of the Federal Election Commission (except one appointed by the President, by and with the advice and consent of the Senate), may not request or receive from, or give to, an employee, a Member of Congress, or an officer of a uniformed service a political contribution.
 
 
 84
 (2)
 
 
 85
 (A) No employee described under subparagraph (B) (except one appointed by the President, by and with the advice and consent of the Senate), may take an active part in political management or political campaigns.
 
 
 86
 (B) The provisions of subparagraph (A) shall apply to —
 
 
 87
 (i) an employee of —
 
 
 88
 (I) the Federal Election Commission;
 
 
 89
 (II) the Federal Bureau of Investigation;
 
 
 90
 (III) the Secret Service;
 
 
 91
 (IV) the Central Intelligence Agency;
 
 
 92
 (V) the National Security Council;
 
 
 93
 (VI) the National Security Agency;
 
 
 94
 (VII) the Defense Intelligence Agency;
 
 
 95
 (VIII) the Merit Systems Protection Board;
 
 
 96
 (IX) the Office of Special Counsel;
 
 
 97
 (X) the Office of Criminal Investigation of the Internal Revenue Service;
 
 
 98
 (XI) the Office of Investigative Programs of the United States Customs Service;
 
 
 99
 (XII) the Office of Law Enforcement of the Bureau of Alcohol, Tobacco, and Firearms; or
 
 
 100
 (XIII) the National Imagery and Mapping Agency; or
 
 
 101
 (ii) a person employed in a position described under section 3132(a)(4), 5372, 5372a, or 5372b of title 5, United States Code.
 
 
 102
 (3) No employee of the Criminal Division of the Department of Justice (except one appointed by the President, by and with the advice and consent of the Senate), may take an active part in political management or political campaigns.
 
 
 103
 (4) For purposes of this subsection, the term "active part in political management or in a political campaign" means those acts of political management or political campaigning which were prohibited for employees of the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.
 
 
 104
 (c) An employee retains the right to vote as he chooses and to express his opinion on political subjects and candidates.
 
 
 105
 § 7324. Political activities on duty; prohibition
 
 
 106
 (a) An employee may not engage in political activity —
 
 
 107
 (1) while the employee is on duty;
 
 
 108
 (2) in any room or building occupied in the discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof;
 
 
 109
 (3) while wearing a uniform or official insignia identifying the office or position of the employee; or
 
 
 110
 (4) using any vehicle owned or leased by the Government of the United States or any agency or instrumentality thereof.
 
 
 111
 (b)
 
 
 112
 (1) An employee described in paragraph (2) of this subsection may engage in political activity otherwise prohibited by subsection (a) if the costs associated with that political activity are not paid for by money derived from the Treasury of the United States.
 
 
 113
 (2) Paragraph (1) applies to an employee —
 
 
 114
 (A) the duties and responsibilities of whose position continue outside normal duty hours and while away from the normal duty post; and
 
 
 115
 (B) who is —
 
 
 116
 (i) an employee paid from an appropriation for the Executive Office of the President; or
 
 
 117
 (ii) an employee appointed by the President, by and with the advice and consent of the Senate, whose position is located within the United States, who determines policies to be pursued by the United States in relations with foreign powers or in the nationwide administration of Federal laws.
 
 
 
 Notes:
 
 
 *
 The Honorable Barbara S. Jones, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 At one point, the district court at oral argument described the poster as being "as political as you could imagine." J.A. at 98 (Tr. of 11/03/00, at 12)
 
 
 [2]
 The United States Office of Special Counsel ("OSC") is an independent federal investigative and prosecutorial agency. Its functions and powers are found in the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111, the Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16, and the Hatch Act, as amended in 1993, Pub.L. No. 103-94, 107 Stat. 1001. With regard to the Hatch Act, the OSC promotes compliance by providing advisory opinions on, and enforcing, the ActSee "Introduction to the OSC," available at http://www.osc.gov/intro.htm (last modified 06/02/03).
 
 
 [3]
 The October 26, 2000 OSC opinion states in part as follows:
 The Hatch Act (5 U.S.C. §§ 7321-7326) generally permits most federal employees, including United States Postal Employees, to actively participate in partisan political management and partisan political campaigns. Covered employees, however, are prohibited from engaging in political activity while on duty, in a government office or building, while wearing an official uniform, or using a government vehicle. See 5 U.S.C. § 7324.
 Political activity has been defined as activity directed toward the success or failure of a political party, candidate for a partisan political office or partisan political group. 5 C.F.R. § 734.101. Therefore, covered employees are prohibited, among other things, from displaying or posting partisan political posters or partisan candidates' position statements in government offices or buildings, including union space and bulletin boards.
 J.A. at 47 (Letter from William E. Reukauf, Associate Special Counsel for Prosecution, to Court Wheeler, Attorney, United States Postal Service, of 10/26/00).
 
 
 [4]
 Section 7324 of the pre-1993 Hatch Act provided as follows:
 (a) An employee in an Executive agency or an individual employed by the government of the District of Columbia may not —
 ...
 (2) take an active part in political management or in political campaigns.
 For the purpose of this subsection, the phrase "an active part in political management or in political campaigns" means those acts of political management which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.
 (b) An employee or individual to whom subsection (a) of this section applies retains the right to vote as he chooses and to express his opinion on political subjects and candidates.
 5 U.S.C. § 7324 (1990).
 
 
 [5]
 The APWU claims on appeal that some of the postings were performed by retired Postal Service employees, whose actions are outside the scope of Section 7324 because they are not "employees" as defined by the Hatch Act. However, the bulletin boards are controlled by the APWU, which is an agent of the active employees, and its use for "political activity" must be deemed to be an act of those employees. Otherwise, the prohibitions of the Hatch Act could be routinely evaded by the use of agents of current employees to perform proscribed political activities
 
 
 [6]
 The district court and appellees rely heavily on a House Committee Report that states as follows on the subject of union bulletin boards:
 
 
 [13]
 Union bulletin boards
 Currently, many Federal agencies make bulletin boards available to Federal employee unions on which items of interest to the union members may be posted. One of the items usually posted on these bulletin boards is the union newsletter. Frequently, union newsletters contain a solicitation for members to contribute to the political committee of the union. An overly literal reading of [the proposed Hatch Act amendments] might hold that posting such a newsletter would be a violation of section 7323(a)(4)(B), concerning solicitations in Federal buildings, or section 7325(a)(2), concerning engaging in political activities in a Federal building. The committee does not intend that this legislation be construed in such a manner. Rather, the committee intends that the posting of union newsletters on bulletin boards, which has been allowed under existing law, continue to be allowed. Moreover, the distribution of union newsletters in a Federal building should continue to be permitted. On the other hand, direct person-to-person solicitations of funds at the worksite or on duty time is clearly prohibited.
 H.R.Rep. No. 103-16, at 19 (1993) (cited at Burrus, 247 F.Supp.2d at 378; Appellees' Br. at 23-24). Because the above passage deals with the solicitation of contributions to a general political committee of the union, and not with the endorsement of a candidate for partisan political office (more clearly an instance of "political activity"), it has little bearing on this dispute. We need not decide now whether the display in the workplace of a poster or newsletter soliciting contributions to a union's general political committee would constitute prohibited "political activity."