**Juan B. Perez SANCHEZ,
et al., Plaintiffs,**

v.

**PUBLIC BUILDING AUTHORITY,
et al., Defendants.**

**No. CIV. 05–1396(JAF).**

United States District Court,
D. Puerto Rico.

Nov. 29, 2005.

---

Ariel Hernandez–Santana, Jesus M. Hernandez–Sanchez, Hernandez Sanchez Law Firm, Raul Barrera–Morales, Raul Barrera Morales Law Office, San Juan, PR, for Plaintiffs.

Yvonne M. Menendez–Calero, Quinones, Sanchez & Guzman, PSC, Lavinia Aparicio–Lopez, Commonwealth Department of Justice, Humberto Guzman–Rodriguez, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs Juan B. Pérez Sánchez ("Pérez"), Rosa Vega Padró, the conjugal partnership composed between them, and their daughter, Valerie Pérez Vega (collectively referred to hereinafter as "Plaintiffs"), filed the present complaint against the Public Building Authority ("PBA"); Lilliam Rivera Correa, in her personal and official capacity as Executive Director of the PBA; Angel Santiago Badé, in his personal and official capacity as PBA's Caguas Regional Director; Dextel Passalaqua, in his personal and official capacity as PBA's Caguas Regional Director; Gerardo Suárez Román, in his personal and official capacity as PBA's Labor Relations Director; Fernando Rodríguez Fernández, in his personal and official capacity as PBA's Caguas and Humacao Regional Security Director; and an unnamed insurance company (collectively referred to hereinafter as "Defendants"), alleging violations of Pérez' rights under the First and Fourteenth Amendments of the United States Constitution, U.S. Const. amend. I & XIV, 42 U.S.C. § 1983 (1994 & Supp. 2003) and Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141 (1991 & Supp.2003). Plaintiffs seek monetary and injunctive relief. *Docket Document No. 16.* Defendants move to dismiss the claim.

*Docket Document No. 9.* Plaintiffs oppose the motion to dismiss. *Docket Document No. 17.*

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from Plaintiffs' amended complaint. *Docket Document No. 16.* As we must, we "accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 62 (1st Cir.2004).

Pérez is an active member of the New Progressive Party ("NPP") in Puerto Rico and has held various posts within the organization: Electoral commissioner, electoral coordinator, and electoral college functionary. He is currently an NPP assemblyman in Gurabo and previously ran to be mayor of that town as an NPP candidate.

In 2000, when Pérez was working as PBA supervisor of administrative services in Caguas, Puerto Rico, the Popular Democratic Party ("PPD") won the commonwealth elections. Shortly after the PPD assumed power, Pérez claims he was subject to a string of discriminatory acts motivated by his affiliation with the NPP.

In January 2001, Pérez was demoted from his supervisory post and a member of PPD was appointed to replace him. Dexter Passalaqua, who was PBA's Caguas Regional Director at the time, ordered Pérez' phone, parking space, and office taken away and he was assigned a "cubbyhole." Pérez presently has no regular duties and is frequently idle while at work.

On June 4, 2001, Passalaqua incorrectly charged Pérez with mishandling an agency credit card.

On June 5, 2001, Pérez' vacation pay was improperly withheld for an allegedly authorized trip he took during work hours to PBA's Human Resources Office in San Juan.

On August 31, 2001, Pérez received a written warning from Gerardo Suárez, PBA's Director of the Office of Labor Relations ("Suarez"), for saying "the one who eat now do not eat afterwards [sic]."

On February 3, 2003, Pérez received a written warning from Luis R. Matos, PBA Auxiliary Director, for failing to deliver payroll information, a duty that Pérez claims is not part of his job description.

On February 26, 2003, Angel Santiago Badé, who succeeded Passalaqua as PBA's Caguas Regional Director in Fall 2002, sent Suárez a letter asking him to investigate Pérez for insubordination relating to a trip Pérez made to PBA's central office in San Juan.

On March 6, 2003, Pérez filed an ethics grievance against Matos and Passalaqua, alleging that they were submitting fraudulent claims for per diem and mileage. According to Pérez, the harassment he suffered worsened after he filed the ethics grievance.

An ethics grievance was filed against Pérez on October 7, 2003, for failing to file financial reports. He was later acquitted of the charge.

On July 20, 2004, Pérez applied for the post of PBA's Caguas Regional Director, but the job was given to a candidate affiliated with the PPD who was not as well qualified as Pérez. Pérez was similarly unsuccessful when he applied to be an internal security guard, a field supervisor, a regional director's assistant, and a regional director's auxiliary administrator. Members of the PPD were hired to fill all of these PBA positions.

On August 27, 2004, Pérez was charged with the fraudulent use of what he terms "assistance cards." He was later acquitted of the charge.

On September 15, 2004, the Labor Relations Office began to investigate Pérez for his display of NPP stickers on his car. On October 11, 2004, Pérez was refused entry to the agency parking lot because of the NPP stickers.

On November 1, 2004, the Labor Relations Office's Interim Director, Ivonne Maysonet Ruiz, called Pérez to her office to discuss the stickers but he was turned away when he. arrived at her door. On November 9, 2004, Maysonet instructed agency security that Pérez was no longer permitted to park in the agency lot.

As of December 2, 2004, Pérez' work schedule was suddenly changed to begin one hour earlier without his permission.

On December 23, 2004, the Office of Governmental Ethics sent Pérez a letter questioning his decision to display a photo of Pedro Rosselló González ("Rosselló"), president of the NPP party and former NPP governor of Puerto Rico, in his office. The letter gave Pérez fifteen days to either respond to the inquiry or remove the photo ("the photo removal request"). Shortly thereafter, the Office of Governmental Ethics sent another letter questioning Pérez' workplace display of a sign that said "I'm thirsty of justice and I will be satiated [sic]."

Plaintiffs aver that neither Lilliam Rivera Correa, PBA's Executive Director, nor any other Defendant has made an attempt to stop political discrimination within the PBA. Moreover, Plaintiffs allege that Rivera has created what are called Internal Security Posts to institutionalize NPP political discrimination within the PBA. According to Plaintiffs, the Internal Security Posts' purpose is to spy on NPP-affiliated employees with an eye to firing them for real and invented disciplinary infractions.

Plaintiffs filed their original complaint on April 13, 2005. *Docket Document No. 1.* Defendants moved to dismiss on June 20, 2005. *Docket Document No. 9.* Plaintiffs filed an amended complaint on July 19, 2005. *Docket Document No. 16.* Plaintiffs also filed an opposition to the Defendants' motion to dismiss that same day. *Docket Document No. 17.*

## II.

### *Motion to Dismiss Standard Under Rule 12(b)(6)*

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether the plaintiff has stated a claim under which relief can be granted.

■ We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and need only give the respondent

fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz*, 534 U.S. at 512–515, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III.

### *Analysis*

Defendants argue that Plaintiffs' complaint must be dismissed: (1) for lack of subject matter jurisdiction; (2) because the claims are time barred; and (3) for failure to state a cognizable § 1983 claim. We will examine each of these issues in turn.

### A. *Subject Matter Jurisdiction*

Defendants submit that Plaintiffs' original complaint does not adequately state the basis for this court's federal question jurisdiction because although § 1983 is a federal law, it only provides a venue for vindicating federal rights established in the U.S. Constitution or other federal statutes.

While it is true that a plaintiff must assert the denial of a right, privilege or immunity secured by federal law to allege a valid § 1983 claim, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Plaintiffs have, in their amended complaint, cited the Fourteenth Amendment as the federal right they seek to vindicate, therefore obviating the Defendants' subject matter jurisdiction argument. *Docket Document No. 17.* What is more, the thrust of Plaintiffs' complaint—that Pérez was discriminated against on the basis of his political affilia-

tion—makes clear that their § 1983 claim implicates the First Amendment.

### B. *Statute of Limitations*

Defendants argue that Plaintiffs' claims based on events that occurred in 2001 and 2003 are untimely and must be dismissed.

Section 1983 does not have a built-in limitations period, but instead borrows the forum state's general statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 240–41, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In Puerto Rico, the limitations period for personal injuries is one year. *See* 31 L.P.R.A. § 5298(2) (1991 & Supp.2003). Accordingly, the one-year term applies for § 1983 actions in Puerto Rico. *See Rodriguez–Garcia v. Mun. of Caguas*, 354 F.3d 91, 96 (1st Cir.2004); *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992). Because Plaintiffs' original complaint was filed on April 13, 2005, Defendants argue those § 1983 claims based on discriminatory acts occurring prior to April 13, 2004, are time-barred.

Allegations of a hostile work environment are treated differently than allegations of discrete discriminatory acts for the purposes of § 1983 statute of limitations challenges. *See National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (Title VII); *Ruiz–Sulsona v. Univ. of P.R.*, 334 F.3d 157, 160 (1st Cir.2003) (applying *Morgan* in the context of § 1983 claim). A hostile work environment claim is created by "a series of separate acts that collectively constitute one unlawful employment practice" whereas each discrete discriminatory act constitutes a stand-alone actionable "unlawful employment practice." *Morgan*, 536 U.S. at 114–16, 122 S.Ct. 2061 (citation omitted); *Ruiz–Sulsona*, 334 F.3d at 159–60;

*Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 18 (2002). Because Plaintiffs have couched their complaint in terms of "continuous and systemic" discrimination suffered as a result of PBA's "policy of political discrimination," they implicitly argue a hostile work environment claim. *Docket Document No. 16.*

■ The Supreme Court has stated that while allegations of discrete discriminatory acts must always be filed within the statute of limitations, parts of a hostile work environment claim will not be time-barred if at least one act falls within the time period. *Morgan,* 536 U.S. at 113–17, 122 S.Ct. 2061. The propriety of characterizing the 2001 and 2003 events as part of a timely filed hostile work environment claim therefore turns on (1) whether they are claims that could not have been independently actionable under § 1983 had they been timely pled, and (2) whether at least one component of the hostile work environment claim falls within the statute of limitations period. We make each inquiry in turn.

■ We find that Pérez' January 2001 demotion is sufficiently pled as a component of a hostile work environment claim. In *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209 (1st Cir.1989), the First Circuit held en banc that an employee has an independent § 1983 political discrimination action based on changed work conditions when he is forced into a job that is "unreasonably inferior" to his previous position. Whether the January 2001 demotion constituted such an "unreasonably inferior" change in Pérez' work conditions to have been independently actionable is a

question whose answer will only become clear as facts develop at a later stage of this litigation.[1] For the time being, we hold that Plaintiffs have met basic pleading requirements and clearly cast the January 2001 demotion as part of a hostile work environment claim. *See Arturet Velez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10 (1st Cir.2005) (holding that a court must let a claim survive so long as it "can plausibly be embraced" by a viable legal theory).

Neither are we convinced that Pérez' withheld vacation pay would have been independently actionable under § 1983 and we, therefore, hold that that claim can also proceed as a component of Plaintiffs' hostile work environment claim. *See Valentin Rodriguez v. Mun. of Barceloneta,* 236 F.Supp.2d 189 (D.Puerto Rico 2002)(rejecting statute of limitations challenge against § 1983 hostile work environment claim including harassment relating to vacation rights); *Cf. Mendez–Soto v. Rodriguez,* 334 F.Supp.2d 62 (D.P.R.2004)(treating paycheck deduction for allegedly unauthorized work absence to be an independent § 1983 action).

■ Lastly, the 2001 and 2003 written warnings, investigation of insubordination, and ethics grievance would likely not have been independently actionable and are, therefore, part of Plaintiffs' hostile work environment claim. Generally speaking, the statute of limitations on discriminatory evaluations "is triggered only if the implications of the evaluation have crystallized and some tangible effects of the discrimination were apparent to the plaintiff, i.e., if the plaintiff is aware that he will in fact be injured by the challenged

---

1. Plaintiffs' complaint notes that Pérez is currently "maintained idle all day long." While this is certainly a drastic and perhaps "unreasonably inferior" change from his previous supervisory responsibilities, it is not clear whether the profound degradation of Pérez'

job responsibilities occurred immediately upon his first demotion in January 2001. The reduction in his job responsibilities could have occurred gradually over the ensuing four years.

practice." *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 50 (1st Cir.1999) (citation omitted)(Title VII); *Cf. Miller v. N.H. Dep't of Corr.,* 296 F.3d 18, 22 (1st Cir.2002)(finding a letter of warning and negative performance evaluation to be discrete discriminatory acts for the purposes of *Morgan* statute of limitations inquiry when the Title VII plaintiff perceived their negative effects at their issuance). Negative evaluations are not "ripe for adjudication" as discrimination violations until they are actually applied against plaintiffs in particular employment decisions. *Thomas,* 183 F.3d at 50. Plaintiffs implicitly argue the ripeness issue when they suggest that the string of warnings were intended "to build up a file" against Pérez in order to legitimate his eventual termination, *Docket Document No. 16,* and we are convinced that the written warnings, investigation into subordination, and ethics grievance, therefore, could not have been actionable as stand-alone causes of action.

Defendants aver that even if the 2001 and 2003 events could be viewed as part of a hostile work environment action, the hostile work environment claim is time-barred in its entirety because it does not boast at least one component act occurring within the limitations period. *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061. Defendants' inventory of Plaintiffs' claims is incorrect. Plaintiffs submit numerous allegedly discriminatory incidents occurring squarely within the statute of limitations period, including: (1) the rejection of Pérez' application for employment as PBA's Caguas Regional Director; (2) the abusive investigation into his allegedly fraudulent use of "assistance cards"; (3) the sudden unilateral change of his work schedule; (4) his inability to park in an agency lot due to the display of political stickers on his car; and (5) the demand that he remove a sign from his office that read "I'm thirsty of justice and I will be satiated [sic]"; (6) that Pérez applied for, but did not receive due to his political affiliation, positions within PBA as a security guard, field supervisor, regional director's assistant, and regional director's auxiliary administrator. Plaintiffs' complaint also alleges—without providing specific dates or much detail—(7) that Rivera created systemic mechanisms at PBA to effectuate political discrimination against NPP members.

Because Defendants do not challenge whether any of these incidents could constitute a cognizable claim under § 1983, and because these incidents occurred well within the statute of limitations period, we hold that the Plaintiffs' have properly and timely pled a hostile work environment claim, of which the 2001 and 2003 are a part.

### C. *Failure to State a Cognizable § 1983 Claim*

 Defendants aver that their request that Pérez remove Rosselló's photo from his office is not a cognizable claim under § 1983 because they were merely executing in good faith the mandate of § 1822(j) of Puerto Rico's Civil Code.[2] 3 L.P.R.A. § 1822(j)(LEXIS 2005). Section 1822(j), which prohibits government employees from displaying partisan political paraphernalia while on the job, clearly applies to the Rosselló photo, communicating as it does Pérez' involvement with and advocacy of the NPP political party. Defendants' argument implicitly evokes the doctrine of qualified immunity, a defense that the Supreme Court instructs must be resolved at the earliest possible stage of

---

**2.** Plaintiffs appear not to have read the Defendants' motion to dismiss; their opposition papers do not respond to—or even specifically mention—Defendants' argument pertaining to the photo removal request. *Docket Document No. 17.*

litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

"In deference to the sensitive discretionary judgments that government officials are obliged to make, qualified immunity safeguards even unconstitutional conduct if a reasonable officer at the time and under the circumstances surrounding the action could have viewed it as lawful." *Jordan v. Carter*, 428 F.3d 67, 71 (1st Cir.2005).

 A qualified immunity defense involves a three-prong inquiry: (1) whether a state official's actions constituted a deprivation of the plaintiff's constitutional rights; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable state official would have believed that the action taken violated that clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Wilson v. City of Boston*, 421 F.3d 45, 52 (1st Cir.2005).

 Although the Defendants focus on prong three—the objective reasonableness prong—in making their case for qualified immunity, the Supreme Court has held that a court evaluating a claim of qualified immunity must always begin by asking "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). We hold that the photo removal request is not a constitutional deprivation for which Plaintiffs can recover under § 1983 and, therefore, dismiss that portion of Pérez' complaint.

The photo removal request required by § 1822(j) and executed by Defendants closely approximates a counterpart federal prohibition of on-the-job political activity which has been found to be constitutional by various courts. The Hatch Act, as first enacted in 1939, barred federal employees from taking "any active part in political management or in political campaigns." 76 Cong. Ch. 410, 53 Stat. 1147 (1939)(current version at 5 U.S.C. § 7324(a)). In 1993, the Hatch Act was amended to permit employees to take part in political management or in political campaigns while off-the-job, but strengthened the requirements that federal employees "not engage in any political activity on the job." 5 U.S.C. § 7324(a) (1996 and Supp.2005); H.R.Rep. No. 103–16 (1993), available at 1993 WL 46758 at *15–16.

The Supreme Court first reviewed the constitutionality of the pre–1993 Hatch Act under the First Amendment in *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), in which an industrial worker at the United States Mint challenged his removal from government employment for having worked in his free time as a ward executive committeeman for his political party, and also as a poll worker on election day.

The Court acknowledged that the Hatch Act implicated federal employees' First Amendment rights, but noted that these rights must sometimes bend to regulation meant to further other important societal interests such as "an efficient public service." *Id.* at 98–99, 67 S.Ct. 556. "Congress and the President are responsible for an efficient public service," the court held, and:

"[i]f, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics as party officers or workers, we see no constitutional objection."

*Id.* at 99, 67 S.Ct. 556 (finding it of little moment that the worker had no contact with the public or responsibility for policy formulation).

Over twenty-five years later, the Court revisited and reaffirmed its decision in *Mitchell,* and elaborated on the pre–1993 Act's constitutionality. *U.S. Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). It is fundamental, the Court said, that federal employees "should administer the law in accordance with the will of Congress, rather than in accordance with their own or the will of a political party." *Id.* at 564–65, 93 S.Ct. 2880. By requiring federal employees to abstain from overt political activity, the Hatch Act avoids the appearance of biased execution of the law, which is critical "if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Id.* at 565, 93 S.Ct. 2880; *See also United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (noting that a particularly important justification for the Hatch Act is to "make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs").

Given the Supreme Court's plain statements that the pre–1993 Hatch Act's expansive ban on government employees' political activity was constitutional, we are convinced that § 1822(j)'s more cautious ban on workplace political paraphernalia is also constitutional. In describing the myriad reasons that justified the Hatch Act's abrogation of government employees' First Amendment rights, the Supreme Court in *Mitchell* and *US Civil Service Comm'n* could well have been detailing the reasons given by the Puerto Rico legislature for enacting § 1822(j)'s ban on workplace political paraphernalia: "The state has the obligation in its execution of public service not only to prohibit political discrimination but also to avoid the appearance of parti-

san partiality." Exposition of Motives, Law No. 41, January 3, 2003 (translation ours). If the Supreme Court found such concerns sufficient to validate the constitutionality of the federal Hatch Act, which went so far as to prohibit off-the-job political activities, certainly they also suffice to meet Pérez' First Amendment challenge against § 1822(j), which only impacts on-the-job political activity.

Furthermore, § 1822(j)'s language is nearly identical to the language of a particular Hatch Act regulation—that federal employees "may not wear partisan political buttons or display partisan political pictures, signs, stickers, or badges while he or she is on duty or at his or her place of work," 5 C.F.R. § 734.306—that the Second Circuit recently found did not violate the First Amendment rights of government employees who were barred from hanging a poster supporting Democratic presidential candidate Al Gore in their workplace. *Burrus v. Vegliante,* 336 F.3d 82 (2d Cir.2003). The parallel between *Burrus* and the present controversy is obvious, and we find the Second Circuit's extension of Supreme Court precedent to be persuasive.

Section 1822(j) applies "equally to all partisan activities of the type described... [it does not] seek to control political opinions or beliefs, or to interfere with or influence anyone's vote at the polls." *See Letter Carriers,* 413 U.S. at 564, 93 S.Ct. 2880. Plaintiffs do not allege an uneven execution of the law, for example, by claiming that photographs of PPD candidates were left hanging unchallenged in others' offices. Simply put, § 1822(j) is a constitutional means to insulate the government workplace from political coercion.

Based on the foregoing, we conclude that the remainder of the qualified immunity defense need not be examined; be-

cause Plaintiffs have not properly alleged the first prong of the inquiry—that a state official's actions constituted a deprivation of the plaintiff's constitutional rights—Plaintiffs have not even alleged an adequate § 1983 claim. Section 1983 requires a constitutional deprivation, and the Defendants' photo removal request does not violate the Constitution.

### D. Supplemental Claims

Defendants' final argument is that Plaintiffs' supplemental Commonwealth claims should be dismissed pursuant to 28 U.S.C. § 1367(c) because all of Plaintiffs' federal claims warrant dismissal. As discussed above, nearly all of Plaintiffs' § 1983 claims survive Defendants' Rule 12(b)(6) motion to dismiss. Accordingly, Defendants' motion to dismiss Plaintiffs' supplemental Commonwealth claims pursuant to 28 U.S.C. § 1367(c) is denied.

## IV.

### Conclusion

For the reasons stated herein, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' § 1983 claim based on the photo removal request is **DISMISSED WITH PREJUDICE**. The rest of Plaintiffs' § 1983 claims premised on actions occurring in 2001, 2003, 2004, and 2005 remain, as do Plaintiffs' supplementary Commonwealth claims.

**IT IS SO ORDERED.**