Juan B. PEREZ–SANCHEZ, et al., Plaintiffs

v.

**PUBLIC BUILDING AUTHORITY,** et al., Defendants,

Civil No. 05–1396(FAB).

United States District Court, D. Puerto Rico.

March 12, 2007.

Ariel Hernandez–Santana, Jesus M. Hernandez–Sanchez, Hernandez Sanchez Law Firm, San Juan, PR, Raul Barrera–Morales, Raul Barrera Morales Law Office, San Juan, PR, for Plaintiffs.

Nerylu Figueroa–Estasie, Sanchez Betances & Sifre, P.S.C., Yadhira Ramirez–Toro, Department of Justice, Commonwealth of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Plaintiffs Juan B. Perez–Sanchez, Rosa Vega–Padro, their conjugal partnership, and their daughter, Valerie Perez–Vega, brought suit against the Public Building Authority ("PBA"), Lillian Rivera–Correa, in her personal and official capacity as PBA's Executive Director, Angel Santiago–Bade, in his personal and official capacity as PBA's Caguas Regional Director, Dexter Passalaqua, in his personal and official capacity as PBA's Caguas Regional Director, Gerardo Suarez Roman, in his personal and official capacity as PBA's Labor Relations Director, Fernando Rodriguez–Fernandez, in his personal and official capacity as PBA's Caguas and Humacao Regional Security Director, and an unnamed insurance company. Plaintiffs allege violations of Perez–Sanchez's rights under the First and Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 and negligence under Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141. Specifically, Mr. Perez–Sanchez claims he was subject to a string of discriminatory acts motivated by his affiliation with the New Progressive Party ("NPP"). *Id.*

On February 22, 2006, plaintiffs filed an amended complaint to include a claim of conspiracy to violate civil rights under 42 U.S.C. § 1985 against other defendants, Leila Hernandez–Umpierre, Angel Torres–Garau and Sandra Marrero–Reyes, both in their official and personal capacities. (Docket No. 33).

On November 30, 2006, defendants PBA, Lillian Rivera–Correa, Angel Santiago–Bade, Gerardo Suarez Roman and Fernando Rodriguez, in their official capacities, and Dexter Passalaqua, Leila Hernandez–Umpierre, Angel Torres–Garau and Sandra Marrero, in their official and personal capacities, moved for summary judgment to dismiss plaintiffs' claims (Docket No. 66).[1]

1. On February 21, 2006 the Court dismissed plaintiffs' claims against defendants Lillian Rivera–Correa, Angel Santiago Bade, Gerardo Suarez Roman and Fernando Rodriguez Fernandez in their individual capacities. (Docket No. 97).

For the reasons discussed below, the Court **GRANTS** defendants' Motion for Summary Judgment and dismisses this suit.

## A. *FACTUAL AND PROCEDURAL BACKGROUND* [2]

Plaintiff Juan B. Perez–Sanchez began working as an Auxiliary Regional Director of the Public Building Authority's regional office in Caguas in 1993. (Docket No. 64, Statement of Uncontested Material Facts "SUMF", 1, Exh. 1). Mr. Perez–Sanchez is an active member of the NPP in Puerto Rico and alleges that he has identified himself as such to his employer, supervisors, and others within the PBA. Indeed, his private automobile has many NPP political bumper stickers on it.

On September 1, 1995, Perez–Sanchez began to occupy the position of Administrative Services Supervisor at PBA's regional office in Caguas. (SUMF, 4, Exh. 1) In that same month, a job description form (known as OP–16) for the Administrative Services Supervisor was prepared. (SUMF, 7, Exhs. 1 & 5) It outlined Mr. Perez–Sanchez's duties and responsibilities. In 1999, a new OP–16 job description was prepared for the same position, again describing Mr. Perez–Sanchez's duties and responsibilities. (SUMF, 10, Exh. 5 and Docket No. 80) As described in the 1999 OP–16 form, Plaintiff's duties and responsibilities as an Administrative Services Supervisor encompassed some 18 areas. Plaintiff's supervisory and other responsibilities were varied. They included assisting the regional director at meetings with agency directors heads; helping in the preparation of the budget for the region; and preparing extraordinary projects such as: channeling of pluvial water, construction of walls and ornamental steel fences, and construction of the warehouse for the region. *Id.*

Following the Puerto Rico general elections of November, 2000, and while Perez–Sanchez was working as an Administrative Services Supervisor at PBA's regional office in Caguas, the Popular Democratic Party ("PPD") took control of the government. After the PPD assumed power in January 2001, defendant Dexter Passalaqua became the Regional Director of the PBA's office in Caguas. As such, he became Perez' immediate supervisor. (SUMF, Exh. 1 and Docket No. 74, 35)

After Mr. Passalaqua became the Caguas Regional Director, Perez–Sanchez practically performed no duties other than certifying the attendance of the office's employees. (SUMF, 36 Exh. 2) [3]

Perez–Sanchez alleges that he was demoted from his supervisory position and that a member of the PPD was appointed to replace him **in January 2001.** He also claims that Mr. Passalaqua ordered that Perez–Sanchez's telephone, parking space, and office be taken away, and assigned him to a "cubbyhole". Furthermore, Perez–Sanchez alleges that he currently has no regular duties and that he is frequently idle while at work. He also alleges that on **June 4, 2001,** Mr. Passalaqua incorrectly charged him with mishandling an agency

---

2. Additional background for this case is outlined in the November 29, 2005, 402 F.Supp.2d 393, Opinion and Order (Docket No. 22). The following factual narrative, however, pertains particularly to the pending summary judgment motion and is derived from the parties' filings.

3. Although Plaintiff denied SUMF # 36 he admitted that "the only duty he was performing was certifying the attendance of **some** of the employees of the office, since the others left the office without his permission, authorized to do so by the Director and his assistants". Docket No. 74, 36. (Emphasis added)

credit card and that the card was then taken from him. (Docket No. 78, 1–7)

In addition, it is uncontested that Perez–Sanchez has not performed the first function listed in his OP–16 job description form since **January 2001**.[4] (SUMF, p. 5, 17 and Docket No. 78, p. 4) Likewise, Perez has not performed the fourth,[5] fifth,[6] eighth,[7] tenth,[8] twelfth,[9] thirteenth,[10] fourteenth,[11] and seventeenth [12] functions listed in his OP–16 after **January 2001**. (*Id.*, 17, 20, 21, 24, 26, 27, Exh. 1, 5 and 7) Also, Perez–Sanchez stopped performing other functions, including functions number two,[13] three,[14] nine,[15] and fifteen [16] of his OP–16 at some point during **2001**. (*Id.* 18, 19, 25, 31)

In November 2002, Santiago–Bade became PBA's Caguas Regional Director and became Perez–Sanchez's immediate supervisor. Santiago–Bade supervised Perez–Sanchez until 2005. (SUMF, 39, Exhs. 1, 2 and 9 and Docket No. 74, 39; Docket No. 78, 8). According to Perez–Sanchez, when

Santiago Bade became PBA's Caguas Regional director, he basically did not assign any functions to him. Therefore, Perez–Sanchez **continued doing nothing,** just as he had since 2001. (SUMF, Exhs. 1–2 and Docket No. 74, 40)

Defendant Fernando Rodriguez was appointed internal security officer of the Caguas and Humacao Regions in **January 2001.** (SUMF, 38) After Mr. Rodriguez was appointed, Perez–Sanchez stopped performing the second and ninth functions listed in the OP–16 (supervise and certify services provided by private companies with contracts, and assist in the preparation of the budget of the region). *Id.*, 18, 25.

In December 2004, the work schedule of the two PBA employees who used to start work at 8:00 a.m. was changed. Both now began work at 7:00 a.m. like the rest of the employees. The two employees whose schedules were changed were the regional

**4.** Preparation of extraordinary improvement projects such as: channeling of pluvial water, construction of walls, ornamental steel fences and construction of the warehouse for the region.

**5.** Deal with matters prior to bids as required by the regional director.

**6.** Request quotes from suppliers for confirmatory orders whenever emergency situations come up.

**7.** Prepare vacation plans for the director's signature.

**8.** Prepare certifications of the surveillance services for the signature of the regional director, includes, the analysis of the position, verification of the guards' signatures, verify that the working shifts comply with the contract and other services that arise in emergencies and complete the revisions for the payment certifications.

**9.** Prepare and process service orders and purchase requisitions for materials and equipment.

**10.** Work with the necessary documentation for the appointment of the new personnel.

**11.** Supervise and certify services provided by private companies with contracts.

**12.** Assist the regional director in the assignment, coordination and supervision of activities related with the maintenance administration and its conservation.

**13.** Inspection of extraordinary improvement projects.

**14.** Evaluation of damages to the infrastructure in all the projects in the region.

**15.** Help in the preparation of the budget of the region.

**16.** Supervise administrative works of the region in compliance with operational procedures.

director's secretary and Perez–Sanchez. (SUMF, 43, Exh. 3 and 10).[17]

On November 1, 2004 Perez–Sanchez was informed that he could not park his private car in PBA's parking facilities because of the political bumper stickers it displayed. (SUMF, 46, Exh. 4) The issue was referred by PBA to the Office of Governmental Ethics ("OGE") for an opinion. On April 1, 2005, the OGE sent a letter to Perez–Sanchez concerning the situation with the PBA's parking facilities. The letter indicated that, pursuant to Article 3.2(j) of the Law for Governmental Ethics and the Emblems Regulation, "... you have to remove the decals referred to from your vehicle **when you are performing official business and you propose to claim for the reimbursement of expenses or payment of mileage.**" (SUMF, 44, Exh. 11, p. 8) (emphasis in original) The letter also warned Perez–Sanchez of the possible consequences that he could face in the event that he chose not to remove them. *Id.*, p. 9.

On April 13, 2005, plaintiffs filed their original complaint and on July 19, 2005, an amended complaint. (Docket No. 1 & 16) On February 20, 2007, the Court granted defendants Lillian Rivera–Correa, Angel Santiago–Bade, Gerardo Suarez Roman and Fernando Rodriguez–Fernandez request to dismiss plaintiffs' claims against them in their personal capacities. (Docket No. 102)

### B. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also, Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000); *Morales, et al. v. St. Luke's Episcopal Hospital, et al.*, 328 F.Supp.2d 192, 195–196 (D.P.R.2004). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion for summary judgment has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis*

---

**17.** Although plaintiff admitted defendant's SUMF # 43, he explained that he told Santiago–Bade that a change in his work schedule would affect him, but he didn't explain how.

*v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### C. Section 1983

■■■ "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." *Omni Behavioral Health v. Miller,* 285 F.3d 646, 650–51 (8th Cir.2002); *see also Rosario–Rivera v. Aqueduct and Sewer Authority of Puerto Rico,* 472 F.Supp.2d 165, 169–70 (D.P.R.2007); *Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 621 (1st Cir.2000). For a claim to be cognizable under section 1983, plaintiffs must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants's alleged conduct was causally connected to the plaintiffs' deprivation. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■■■ Section 1983 does not have a built-in limitations period, but instead borrows the forum state's statute of limitations for personal injury actions. *Owens v. Okure,* 488 U.S. 235, 240–241, 109 S.Ct.

573, 102 L.Ed.2d 594 (1989); *Rosario–Rivera,* 472 F.Supp.2d 165, 170–71 (D.P.R.2007)(citing *Lopez–Gonzalez v. Municipality of Comerio,* 404 F.3d 548, 551 (1st Cir.2005)); *Wilson v. Garcia,* 471 U.S. 261, 276–278, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1st Cir.1997). In Puerto Rico, the limitations period for personal injuries is one year. *See* P.R. Laws. Ann. tit. 31 § 5298(2). Accordingly, the one-year term applies for section 1983 actions in Puerto Rico. *Torres v. Superintendent of the Police of Puerto Rico,* 893 F.2d 404 (1st Cir.1990).

■■■ "Although the limitations period is determined by state law, the date of accrual is a federal law question". *Gonzalez–Garcia v. Puerto Rico Electric Power Authority,* 214 F.Supp.2d 194, 200 (D.P.R. 2002); *Carreras–Rosa v. Alves–Cruz,* 127 F.3d at 174. *See also, Rivera–Ramos v. Roman,* 156 F.3d 276, 282 (1st Cir.1998) ("For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law.") The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury". *Gonzalez–Garcia,* 214 F.Supp.2d at 200; *Benitez–Pons v. Com. of P.R.,* 136 F.3d 54, 59 (1st Cir.1998). Furthermore, a plaintiff does not need to know all of the facts supporting his claim before the statute of limitations may commence. *Gonzalez–Garcia,* 214 F.Supp.2d at 200 (internal citations omitted) Rather, unambiguous and authoritative notice of the adverse employment action is all that is required to trigger the limitations period. *Id.*; *see also Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992).

■ Allegations of a hostile work environment, however, are treated differently than allegations of discrete discriminatory acts for purposes of challenges to the section 1983 statute of limitations. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (Title VII); *Ruiz–Sulsona v. Univ. of P.R.*, 334 F.3d 157, 160 (1st Cir.2003) (applying *Morgan* in the context of a section 1983 claim). A hostile work environment claim is created by "a series of separate acts that collectively constitute one unlawful employment practice" whereas each discrete discriminatory act constitutes a stand-alone actionable "unlawful employment practice". *Morgan*, 536 U.S. at 114–16, 122 S.Ct. 2061 (citation omitted); *Ruiz–Sulsona*, 334 F.3d at 159–60; *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir.2002). Therefore, when considering whether Plaintiffs' claims are barred by the statute of limitations, the Court must determine whether the continuing violation theory is applicable.

### 1. Continuing Violation Theory

■ Under the continuing violation doctrine "an employee [may] seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims' ".[18] *See Rosario–Rivera*, 472

F.Supp.2d at 170 (*citing O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001); *Davis v. Lucent Technologies, Inc.*, 251 F.3d 227 (1st Cir.2001); *Rodriguez v. Municipality of Barceloneta*, 236 F.Supp.2d 189 (D.P.R.2002)). *See also Figueroa–Garay v. Municipality of Rio Grande*, 364 F.Supp.2d 117, 124 (D.P.R. 2005). The purpose of the continuing violations theory is to ensure that plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory. *Thomas v. Eastman Kodak*, 183 F.3d 38, 54 (1st Cir.1999)

■ Continuing violations can be serial or systemic. *Crowley v. L.L.Bean, Inc.* 303 F.3d 387, 405 (1st Cir.2002). Serial violations refer to a number of discriminatory acts arising from the same discriminatory animus, where each act constitutes a separate actionable wrong. *Figueroa–Garay*, 364 F.Supp.2d at 124 (*citing Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990)). A claim alleging a serial violation is considered timely if one of the discriminatory acts occurred during the limitations period. *Rosario Rivera*, 472 F.Supp.2d at 171–72 (citing *Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 21 (1st Cir.2001)).[19] It is not enough, however, to demonstrate that plaintiff "is merely feeling the effects of some earlier discrimi-

---

**18.** Although the continuing violation theory had its genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, it has been applied in other contexts. *See, Rosario Rivera*, 472 F.Supp.2d 165 (*citing Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984)); *Figueroa–Garay v. Municipality of Rio Grande*, 364 F.Supp.2d 117, 124 (D.P.R.2005).

**19.** In *O'Rourke v. City of Providence*, the court of appeals established three factors to assess the sufficiency of a serial-continuing-violation claim: (1) whether the subject matter of the

discriminatory acts is sufficiently similar to render the otherwise untimely acts substantially related to the timely acts; (2) whether the acts occur frequently, repetitively, or continuously or are isolated and discrete; and (3) whether the acts are sufficiently permanent to make the plaintiff aware of the need to assert his or her rights. 235 F.3d 713, 731 (1st Cir.2001) (internal citations omitted); *see also Rivera–Rodriguez v. Frito Lay Snacks Caribbean, a Div. of Pepsico Puerto Rico, Inc.*, 265 F.3d 15, 21–22 (1st Cir.2001).

natory action". *Muniz Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994).

Systemic violations, on the other hand, refer to situations "where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that fall outside the limitations period". *Crowley,* 303 F.3d at 405. Systemic violations refer to the general practices and policies of an employer, such as hiring, training, and promotion. *Gonzalez–Garcia,* 214 F.Supp.2d at 202 (*citing Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir.1998)). A claim alleging a systemic violation is timely filed if the alleged policy or practice continued into the limitations period. Systemic violations "need not involve an identifiable discrete act of discrimination transpiring within the limitations period". *Figueroa–Garay,* 364 F.Supp.2d at 124. **Plaintiff's burden** consists of demonstrating that he or she has been harmed by the application of a discriminatory policy or practice and that said policy or practice continues into the limitation period. *Id.* If the plaintiff can make this showing, the complaint is considered to be timely filed. *Id.; see also Frito Lay Snacks Caribbean,* 265 F.3d at 21.

In this case, defendants contend that all the events alleged by Perez–Sanchez as discriminatory acts committed against him by defendant Mr. Passalaqua are time-barred because all those acts took place back in 2001. Specifically, defendants argue that "all of Perez's allegation of stripping of his functions are constrained [sic] to January 2001 or to sometime in the year 2001 after January". (Docket No. 66, p. 22).

Plaintiff alleges a **systemic violation** under the continuous violation theory. When considering whether plaintiffs' claims are barred by the statute of limitations, the Court must determine whether to apply the continuing violation theory.

A careful examination of the record demonstrates that plaintiff has failed to present such a continuing violation.

It is clear that plaintiff has failed to identify any discriminatory policy or practice in effect during the statutory period. As correctly stated by defendants, Mr. Perez–Sanchez has failed to proffer any evidence that he was treated differently than members of parties other than the NPP or that he was subjected to a pattern of discriminatory policy or practice that spilled over into the limitations period.

Plaintiff's testimony demonstrates that all his claims stem from the demotion he alleges took place in 2001. Furthermore, according to plaintiff's own testimony "the first instance that [he] felt [he] was being discriminated for his political affiliation was when in **January 2001** Dexter Passalaqua told him that he had brought in a trust employee to perform the duties that he had been performing in relation to the debit [sic] card" (Docket No. 74, 5). Additionally, it is uncontested that all the facts regarding Perez–Sanchez's alleged demotion took place in **2001**. *Id.* Therefore, the statute of limitations began to run at that time; since his alleged demotion in 2001, Perez–Sanchez was aware or should have been aware that he was being unlawfully discriminated against. *Sabree v. United Brotherhood of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 401–402 (1st Cir.1990) ("a continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place"); *Muniz–Cabrero v. Ruiz,* 23 F.3d 607, 611 (1st Cir.1994) ("[t]he proper focus [in continuing violation analysis] is on the time of the *discriminatory act,* not the point at which the *consequences* of the acts become pain-

ful") (emphasis in the original).[20]

▮ Similarly, and although plaintiff has not articulated a **serial** violation, the Court finds that plaintiff has failed to demonstrate that he was subjected to a pattern of continuing violation. Serial violations refer to a number of discriminatory acts arising from the same discriminatory animus, where each act constitutes a separate actionable wrong. Hence, it is **plaintiffs' burden** to show that at least one discriminatory act occurred within the limitations period.

▮ A thorough review of the record demonstrates that Perez–Sanchez has also failed to show that any of the actions that allegedly occurred within the year prior to the filing of the complaint, i.e. the written warnings, the investigation of insubordination, the letter in relation to the ethics grievance regarding the political bumper stickers on Perez–Sanchez's car, the request to remove Governor Rossello's photo from his office, constituted separate and actionable section 1983 violations.[21] Rather, these incidents are natural and foreseeable consequences of the original discriminatory act of 2001. *See Muniz–Cabrero,* 23 F.3d at 611 (refusing to apply the serial violation theory when the plaintiff has failed to show that the timely acts were "separate and actionable § 1983 violations"); *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989) (stating that **plaintiff** "retain[s] the burden of demonstrating that *some* discriminatory act transpired within the appropriate time frame"); *Amoros Santiago v. Perez,* 687 F.Supp. 34, 37 (D.P.R.1988) (the fact that

the original action has caused plaintiff to suffer humiliation up to the present does not constitute a present violation); *see also Lawton v. State Mut. Life Assur. Co.,* 101 F.3d 218, 222 (1st Cir.1996) ("Common sense teaches that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time barred act").

Accordingly, Perez' section 1983 claim is time-barred. He has failed to demonstrate a continuing violation; rather, he is continuing to suffer from the ongoing effects of his 2001 demotion. He himself alleges that since 2001 he has no regular duties and that he is frequently idle while at work.

D. *Conspiracy Claims Under 42 U.S.C. § 1985*

▮ Section 1985(3) of Title 42 of the United States Code prohibits persons from conspiring to deprive any person, or any class of persons, of their constitutional rights. To state a claim under section 1985 a plaintiff "must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.

---

**20.** It is also uncontested that all the facts regarding the deprivation of his functions in the surveillance service area, the safety shoes incident, and the deprivation of his functions as deputy custodian of property took place in 2001. (Docket No. 74, p. 17, §§ 8 and Docket No. 74, §§ 17–22, 23–35).

**21.** *See,* Opinion and Order dated November 29, 2005, where this Court held that section 1983 requires a constitutional deprivation, and the defendant' photo removal request does not violate the Constitution. (Docket No. 22, p. 13–18)

1996); *Concepcion v. Zorrilla,* 309 F.Supp.2d 201, 213 (D.P.R.2004).[22]

■ Equal protection within this provision specifically denotes conduct motivated by "some racial, or ... otherwise class-based, invidiously discriminatory animus." *Concepcion,* 309 F.Supp.2d at 214 *(citing Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)); *Aulson,* 83 F.3d at 3 ("conspiratorial conduct ... [must be] propelled by ... invidiously discriminatory animus"). *See also, Donahue v. City of Boston,* 304 F.3d 110, 122 (1st Cir.2002) (in order to prevail, plaintiff must present evidence that "(1) **some class-based animus** (usually racial) **lay behind the conspirators' action,** and (2) that the conspiracy was aimed at interfering with his protected rights."); *Burns v. State Police Ass'n of Mass.,* 230 F.3d 8, 12 (1st Cir.2000) (emphasis added). For plaintiff Perez–Sanchez to prevail on a claim of a conspiracy to deprive him or a class of persons of which he is a member of their constitutional rights, he must prove that there is some racial or other class-based invidiously discriminatory animus behind the conspirators' actions.

In *United Bhd. Of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court narrowed the scope of section 1985(3) by specifically excluding "conspiracies motivated by economic or commercial animus". The Court, however, declined to rule on whether its protection extended to "any class or organization on account of its political views or activities". *Id.,* at 838, 103 S.Ct. 3352.

■ The Court of Appeals for the First Circuit has not yet issued an opinion on this matter and there is a debate among the courts about whether membership in a political party, absent racial bias, falls within the scope of a section 1985(3) protected class. Previous decisions of this district, however, have unanimously rejected extending the scope of section 1985(3) to conspiracies based exclusively on political discriminatory animus. *See Rivera Sanchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 313 (D.P.R.2005); *Concepcion* 309 F.Supp.2d at 214; *Torres Ocasio v. Melendez,* 283 F.Supp.2d 505, 518 (D.P.R.2003); *Reyes v. Municipality of Guaynabo,* 59 F.Supp.2d 305, 310 (D.P.R.1999); *Morales–Narvaez v. Rossello,* 852 F.Supp. 104, 114–115 (D.P.R.1994); *Rodriguez v. Nazario,* 719 F.Supp. 52, 55–56 (D.P.R.1989). In this district, an employment discrimination claim based on

---

**22.** Section 1985(3) states:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

political affiliation **does not** comprise a cause of action under the civil rights conspiracy statute. *Torres Ocasio*, 283 F.Supp.2d at 518.

The original complaint was amended on February 22, 2006 to include a conspiracy claim under section 1985 against defendants Leila Hernandez–Umpierre, Angel Torres–Garau and Sandra Marrero–Reyes, both in their official and personal capacities. (Docket No. 33). It is defendants' contention that plaintiffs have failed to "show that any protected class was affected by defendants' conduct" under section 1985 because political affiliation is not a protected class under the statute.

▮▮▮ Mr. Perez–Sanchez, however, insists that he has a valid claim under section 1985 because defendants "conspired to deprive him of his First Amendment right to be free of politically-motivated employment discrimination".[23] His claims are therefore exclusively based on his political affiliation, which is not a protected class under section 1985.

Accordingly, Plaintiffs' causes of action brought pursuant to 42 U.S.C. § 1985 against defendants Hernandez–Umpierre, Torres–Garau and Marrero–Reyes are **DISMISSED WITH PREJUDICE.**[24]

E. *Standing to sue under section 1983*

In their Motion for Summary Judgment defendants argue that, although Perez–Sanchez included his wife, Rosa Vega–Pa-dro and his daughter as plaintiffs in a section 1983 claim, they do not have standing to sue under the statute because "actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights". (Docket No. 66, p. 28).[25] The Court agrees.

▮▮▮ Case law in the first circuit is crystal clear. Only the party whose civil rights have been violated may bring a claim pursuant to section 1983. *See Zayas v. Commonwealth of Puerto Rico, et al.*, 378 F.Supp.2d 13, 22 (D.P.R.2005), (*citing Judge v. City of Lowell*, 160 F.3d 67, 76 n. 15 (1st Cir.1998)) ("A section 1983 lawsuit is a personal action".) Therefore, "only the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim". *Id.*; *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir.1991); *Figueroa–Garay, et al. v. Municipality of Rio Grande, et al.*, 364 F.Supp.2d 117, 122 (D.P.R.2005); *Medina–Perez v. Fajardo*, 257 F.Supp.2d 467, 472–473 (D.P.R.2003); *Rodriguez–Oquendo v. Toledo–Davila*, 39 F.Supp.2d 127, 131–132 (D.P.R.1999) ("Family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship"); *Torres v. United States*, 24 F.Supp.2d 181, 183 (D.P.R.1998).

Although plaintiffs did not reply to defendants' arguments regarding their standing to sue under section 1983 in their

---

**23.** Although Mr. Perez–Sanchez failed to specify under which subsection of section 1985 he has based his claim, he further recognized that the aforementioned defendants conspired against him "for reason of his political affiliation". *See* Docket No. 78, p. 19.

**24.** Because it appears from the face of the amended complaint that the only claim brought against defendants Leila Hernandez–Umpierre, Angel Torres–Garau and Sandra Marrero–Reyes was the section 1985 claim, and because the Court finds that dismissal is warranted, there is no need to enter into the qualified and absolute immunity defenses they raised.

**25.** Plaintiffs did not reply to defendants' arguments regarding plaintiffs' standing to sue under section 1983 in their Opposition to Motion for Summary Judgment. (Docket No. 78, p. 25)

**240**

Opposition to Motion for Summary Judgment, it appears that Ms. Vega–Padro, her conjugal partnership, and Ms. Valerie Perez–Vega rest their section 1983 claims on Perez–Sanchez's civil rights violation (Docket No. 78, p. 25). Ms. Vega–Padro, the conjugal partnership and Ms. Perez–Vega have not demonstrated any act by defendants that was directed to them. Accordingly, plaintiffs Rosa Vega–Padro's, Valerie Perez–Vega's and the Perez–Vega conjugal partnership's section 1983 claims are hereby **DISMISSED WITH PREJUDICE.**

### F. *Supplemental State Law Claims*

Finally, defendants argue that Plaintiffs' supplemental Commonwealth claims should be dismissed pursuant to 28 U.S.C. § 1367 if the federal question claims are dismissed. (Docket No. 66)

Because no federal claims on which to ground jurisdiction remain in this case after dismissal of the section 1983 and section 1985 claims, plaintiffs' supplemental state law claims are dismissed **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment and dismisses this case.

**IT IS SO ORDERED.**